Welcome to the Fifth Circuit. A couple reminders or pointers. We are recording each of the arguments for posterity but also for our use in the near future. Please stay directly behind the podium because the microphone is on top of the podium. It picks up noises so if among your advocacy talents is to sort of pound on the podium, please try to restrain yourself here. It does distort the recording. Our lighting system you're probably familiar with. You've already told our courtroom deputy what time you want to reserve for rebuttal but when the red light comes on, which is two minutes after the yellow light comes on, be sure to stop. With that I will call the first case and if anybody for the third case is already in the courtroom, I will note that we'll take a recess after the second one. For the first case is United States v. Alvarado-Zarza. We'll hear from Mr. Stafford. Good morning. Good morning. Notice the court wanted us to address the recent Supreme Court case of Hyannis, whether it would be applicable to this case. I think it can be distinguished but also I think at the same time it supports our position insofar as I was preparing my argument. One of the things that troubled me about this case was that the district court and the government at the trial level never mentioned or adhered to Mahaffey, which I quoted in my brief. And that case has made it clear that 545-104 is plain and it's unambiguous. And this court pretty much has done the same thing. The government in Montes Hernandez, there's a case cited Miller, United States v. Miller, which was also a 545-104 analysis. And the court, this court, helped that 104 was plain, it was unambiguous, and that a driver did not have to have it, I mean he had his turn signal on and didn't turn, and that was not a violation of the law, thus the stop was not. Is there any Texas precedent on the situation we have here where there is a turn lane and so obviously if you're entering that turn lane, yes it's a lane change, but it's a lane change in order to make a turn. You just don't pull into a turn lane and sit there and get out of your car and walk into the grocery store, you'll get hit crossing the street. So is there any Texas precedent addressing that situation where the lane you're changing into is a turn lane from which you must turn? No, there's not. That potentially creates some ambiguity then. Well I don't think it does. If you're supposed to mark the turn, that would be marking the beginning of the turn at least. Well Judge, I think if you take the Mahaffey case that I quoted where it was a two lane going into one, and what the court stresses in that opinion, I think it's totally unambiguous and the statute's totally unambiguous, is that what the court said was a turn means a change of direction, in other words going from one road to another, in other words going from road A to road B. And our situation is that you're changing lanes, you're still going in the same direction, and that was the government's theory at the hearing, was that the actual movement into a turn lane was in fact a turn. And they said that is the law. That was the judge's finding, that it was one continuous turn. But Judge, if I may quote the government in their argument to the court at the suppression hearing, it said the government's perspective is that it's beyond dispute that the movement from the lane of travel to the left turn lane is a turn within the meaning of the law. But we're not, in assessing reasonable suspicion, we're not bound by anyone's justification. We look at the facts as articulated and we ask could a reasonable officer have perceived, could a reasonable officer have perceived a violation? I agree with that. Okay. So we could have a mistake, a fact case or a mistake of law. Mistake of law would be it's not clear when there's this double lane with a turn required. As you said, there's no precedent. So one way of seeing the law is 104A is for lane changes. You've got to blink before you change a lane. And 104B is whenever you're going to turn, no matter what lane you're in, you've got to start 100 feet out. I think you would agree with that. That's your view. I agree with that. Okay. So when the officer says, you know, they're moving and I couldn't tell if it's 100 feet, why isn't that a mistake of fact case? And we just assess, well, is it reasonable if you're following someone that you wouldn't get exactly right 100 feet? Well, I think it'd be more closely to the Hine case, it's a mistake of law. But I'm asking you to play with me a little bit on what if it's a mistake of fact case? The officer says, I thought when they started to blink, it was within 100 feet, whatever lane they're in. No, what he actually testified to was that the change of the lane was in fact a turn. He testified there was two turns, one going into the lane and one when he actually turned. So he said it was a turn. And thus he said... Typically true, officers said, I think the record reflects 200, 211. He sort of says, first, there was the registration decal issue. Second, as soon as I started following him, he did a quick turn. Third, I thought it was within 100 feet. So the officer's saying, I've got a bunch of reasons I thought that lane change was wrong. He isn't saying it was exclusively a 104B violation that I pulled him over for. He didn't say that. But what he said was that there was a violation of when he turned into the turn lane. He classified that as a quote, quote, turn. And the Texas president case law defines a turn of change in direction from one highway to another. Now, how he can be mistaken about that law, I'm at a loss. And because that was their theory. Now, the government's theory now in their brief is that the trial court is correct because he intended, he thought he was getting ready to violate the law. But that wasn't the theory advanced at the district court level. And I think the Hine case that supports us in the concurrent opinion, Judge Kagan says that when you deal with a mistake of law, these are very, very rare cases. And their laws were, there's really, I think the quote language that you have to do some real interpretive work before you can overturn the officer's decision. And the solicitor general in which they adopted said, these are going to be very rare occasions for cases like this to occur. And I suggest this is not one of those rare occasions because there's ample, there's 245 cases that I, after the court asked me to respond to Hine, there's 245 cases that have interpreted 545-104. There's ample precedent, unlike Hine, where there was hardly no case law giving officers guidance as to what they should do. We have ample case law. We had ample case law at the motions of the press hearing, except the district court and the government refused to acknowledge it. And they defined a term. It's plain. It's unambiguous. The statute, I mean, the Court of Criminal Appeals have held that. This court basically has held that in the Miller case. Now, I want to address some of the other issues. I was struck by the fact that apparently the defendant had three lawyers in district court. Were you one of them? No. There was, at the hearing, he had retained counsel. And I was subsequently hired and subbed in. And how that worked, I had a previous law clerk, Cesar Escamilla, who was noted at the trial level, who's a civil lawyer. And he asked me to join him in the representation. And that's how... Were you at the suppression hearing? No, I was not. Did, and it's not clear to me, I think I know, but just to confirm it, defendant did not testify at the suppression hearing? He did not. All right. And you haven't filed a reply brief either, which struck me as strange. Also the fact that neither of you filed a 28-J on the recent Supreme Court authority that we've been talking about. But in any event, the government claims that because you only challenged in the conditional guilty plea, this is their claim, the legality of the stop, that you cannot raise any other issues such as, well, even if the stop was legal, the consent wasn't illegal, and the voluntary post-arrest statements weren't legal. Again, you didn't file a reply brief, but what's your response to the government trying to limit the issues on which you can rely? Well, my opinion is that if the stop is illegal, we never get to those issues. No, sir, if the stop is legal. If the stop is legal, I would suggest that I probably don't have much of a leg to stand on. Why is that? Well, I think if the stop is legal, from my reading of the record, he gave consent almost immediately, even though I raised the issue. The issue was his consent tainted, things of that nature. I would suggest that a legal stop is covered by the notice that that gave, because one of the natural byproducts of a legal stop, if there's consent, is that consent consensual or not consensual? Is the search that was, was it a general search or a limited search? Was his, was he nervous or was he not? So those issues that I raised, I think, is a natural flow from the stop itself. If it's illegal, we still have to address them or the government hasn't briefed them? In other words, the attenuation aspect of this. Well, I think the government acknowledged in its brief that if the stop was illegal, then the fruit of the poisonous tree would apply. David. No, the government's, it's interesting that I'm struck by the government's inconsistent position. It says, if you didn't adequately raise anything other than the legality of the stop, then you can't raise any other issues. They say, but if the stop was illegal, then we get to raise all of these other issues. So the government not surprisingly wants it both ways in their brief, but let's assume the stop was illegal. Why wouldn't the fruit of the poisonous tree be cured by the consent and then later by the, which yielded the first cocaine and then the immediate voluntary statements pre-Miranda that yielded the rest of the cocaine in the back of the vehicle? Well, Judge, I think if that's the court's position, then you'll be overruling your, the court's previous decision in Monte Hernandez, where it basically stated in that opinion, the field circuit did, that if there was no violation of state law, there was no objective basis for justifying the stop. If there's no objective basis for the stop, then the fruit of the poisonous tree would go down and taint everything. Well, if the issue is presented, if the government did preserve that, that's not right. We do look at three factors. How far is the eventual intervening circumstance from the original violation? How flagrant is it? So it isn't an always poisonous tree. You can get attenuated and then it would come in. So I think the question is especially focused on his voluntary pre-Miranda, oh, look in the back and you'll find more cocaine. That's intervening and independent. Well, another thing real quick that I haven't addressed, if you'll allow me, is that the district court helped our expert to be incredible. Didn't find him credible. And we went out and measured the distance. We had a marker showing that Mr. Alvarado-Alvarez in fact had his blinker on within the distance that's required by the statute. Our position is it wasn't a turn. But in our brief, our position, even if the court feels that it was a turn, we still had our blinker on within the prescribed 100 feet. The trooper stated at the hearing that our blinker came on at or near the pedestrian sign. Our expert went out and measured that and it was 300 feet. Now, the district court found him not believable or didn't like him because he couldn't tell her whether or not they were traveling at a safe space between the two. But that question is a valid question because we're trying to assess would a reasonable officer have known 100 feet. So when she says how does speed affect measurement, that's a valid question as to the ultimate Fourth Amendment issue. And he responded that speed had nothing to do when the blinker came on. And she didn't like that response. She said she was the one that interpreted what the law is because his response to that question was speed has nothing to do as to when the blinker came on. When the blinker came on at this spot and that spot to here is 300 feet, it doesn't make any difference how fast you're going. But she didn't like that response. So if a cop says I pulled him over for speeding but the cop happened to have the speed gun on and the speed gun categorically said that the car was going 40, could it never be reasonable as a matter of law that the officer said I visually thought it was faster but there is contradictory evidence? Do you have a case that says that? No, I do not. But what do you think about that? Well, I think the officer's opinion is just an opinion. Right. I mean, and there's case law in Texas that says it's got to be actual facts that support his opinion. And our actual facts that we went out and measured does not support his opinion. Actually, our blinker was on 200 feet before we actually moved into the turn lane. So even if you think there is a turn, we had our blinker on. But I know the position, judges, is if y'all, it's a stretch to say that a movement over in a turn lane is a turn. There's no, I've looked through all the states to see if there's a definition. They've never held that. A turn is a real simple term. It's just a change of direction. My time's up. Thank you. May it please the court, my name is Jennifer Friel and I represent the United States. I want to begin by discussing Hine v. North Carolina, which the court asked the parties to address. As the court knows, Hine concerned a traffic stop. And the court held that when a traffic stop was based on a mistake of law, that the seizure did not violate the Fourth Amendment as long as that mistake of law was reasonable. The court again highlighted that the touchstone of Fourth Amendment jurisprudence is reasonableness. And in the instant case, I want to start by just stating that... If you don't mind, just, so what's the rule you extract from Hine? Is it that we would have to find there's ambiguity in the statute? If the statute, if we don't conclude that there's ambiguity, would you agree that you could never have a good faith mistake of law? I think the best explanation of the test actually comes from the concurring opinion by Judge Kagan, and she writes that the test should be when the law at issue is so doubtful in construction that a reasonable judge could agree with the officer's view. I think that's very succinct. It sort of pulls in the ambiguity with regard to construction. And in the instant case, Judge Moses agreed with the officer. The district court judge here said, yes, this was a continuous movement. This qualified under the Texas Transportation Statute. As 104B or 104A? 104B, 545.104B of the Texas Transportation Code. And I think it's important in looking, since we're talking about Hine and statutory construction and statutory text, to remember that B says when a driver is intending to turn. I think that word intending is very important. When the driver is intending to turn, the signal has to be on for at least 100 feet. And it is undisputed that Alvarado Zarza was intending to turn when he got into the left hand turn lane. Counsel, are you saying the statute would find a violation if a driver confessed that two blocks earlier I was intending to turn when I got to that point and thus needed to turn to blinker on two blocks early? I'm not understanding the weight that you're putting on the word intending. I think it goes to the fact that when you— Let me ask you, is there a distinction in your mind between the distance from where the turn is physically made, 100 feet, and the argument you're now making, when the thought comes into the mind of the driver, which could be well before you get to that 100 feet, and that the blinker must come on when the intent arises? I think it doesn't have to do with the driver's mental thought process, but simply that when someone does turn when we're driving, their car slows down, their car stops. The cars behind them need to know, we've all been frustrated when someone stops in front of you and they haven't had their blinker on. So when that intent, when someone is going to make a turn, when they are intending to turn, they need to have that blinker on for 100 feet. From where? From when they make the turn. Okay. The turn, the 90 degree, not just a lane change. I do think under Mahaffey, the language that was used in the district court by my colleague who said a lane change is a turn, I don't think that necessarily holds up. But what I would like to point out is that the Mahaffey facts were so very different. And as was admitted by appellate counsel, there's not a Texas court that looks at this exact situation with a driver going into a turn lane. In Mahaffey, it was the driver who ultimately got a DWI was on a highway that had two lanes of traffic going in the same direction. And the sign said, right lane ending, vehicles must merge. So he merged. In Mahaffey, a key to the court's opinion was, the Court of Criminal Appeals, was that there was not a change in the direct course of the driver. Mahaffey was great at pointing out all of the cases that had considered this statute. And I certainly looked, everyone's looked. This situation with a lane change to a turn lane simply hasn't been looked at. What was the length of the turn lane here? My understanding, and I did look at the video, is that You didn't look at the video? I did. I'm sorry. I did. Yes, of course. Is that it was a highway that had three lanes, one lane going each direction, and the turn lane in the middle. And the turn lane was quite long. The record shows he was turning into the Pico convenience store right before getting into town. So it appears to be one that was there for quite lengthy. And once he was in the turn lane, now, I'm sorry, did he turn on his blinker before he only while he was in the turn lane? He turned it on before getting into the turn lane. Yes, Your Honor. And the record is somewhat unclear, and I think it has to do somewhat with the district court's credibility determination of the PI. Our officer What is a PI? Private investigator? Private investigator, who she found incredible. I read through that testimony again just yesterday, and at one point he says 200 feet. At one point he says 300 feet. Our officer says less than 100 feet. And I think the record is unclear as to exactly what the private investigator was testifying as far as when that blinker went on. Watching the video, it's difficult for me to say. I'm not a traffic officer, but it did seem reasonable to me when we're getting into whether or not there was a mistake, a fact that it would have been less than 100 feet. It would have been. Okay, when you watch the dash cam, blinker comes on, cops following. Is it 100 feet before he does the lane change and then considerably more before the left turn? I think it's pretty quick. I mean, and that's the testimony that once he's in the turn lane, it's very quick. Once he's in the turn lane, the left turn is quick. Yes. I mean, certainly reason and common sense would tell you that it's not immediate. You get in the turn lane. So is your best argument to us behind ambiguous 104B as to whether it applies to lane into turn or is your best argument, mistake of fact, Rodriguez, clearly it's got to be 100 feet before the turn. Forget where you are, what lane you're in. Anytime you're going to do a full turn, no matter what lane you're in, it's got to start coming on 100 feet. This officer thought it was 100 feet, may be wrong with the dash cam, but that's okay. Which is your better argument, mistake of fact or mistake of law? Well, I don't, I don't, I don't think there were mistakes, but to the extent there were, I do think they were reasonable. And I do think, um, if the, I, when I first read this case, I thought the mistake of fact was the bigger issue. Um, partly because the statute says that intending to turn partly because of reasonable suspicion, the law is a crime has committed or is about to be committed. So I've always felt that the mistake of fact was the bigger issue for this court, which to the extent the government didn't file a 28 J letter, uh, judge Barksdale, that, that might've been that I was focused more on the fact issue than the law issue. But certainly now that I have, I've looked at Hine in, in, in light of this case, I do think that Hine certainly supports the government, especially, I think it's a great point. It's toward the end of the opinion that's, that the court says in Hine, uh, Mr. Hine was not challenging a ticket for violating the taillight ordinance or the taillight statute. He was Alvarado Zarza is not challenging any sort of ticket for this turn. He is challenging the stop and whether or not he never got a ticket because cocaine was found. Correct. So what would he be challenging a ticket for ticket? Let me back up cause I didn't understand your answer. Your first position is this officer had reasonable suspicion to pull him over because he in fact violated what provision of the Texas code? Yes. 545104B the turn. But even though the officer said, sorry, I stopped it because when he turned onto the center lane, the officer said, I stopped it, the car, because when he turned onto the center lane, that sounds like to me, he's getting them on a 104a violation. Yes. 104a doesn't have that 100, so you agree with that? I do agree with you that that would be trouble problematic. I wish the officer had been a little bit more artful and I, uh, officers are great at their jobs. They're not always great at testifying, but I think the district court got it right when she said that it was getting into the lane to do a turn. Why do you get into a turn lane to turn? So while he said, I, I, I saw the violation. I do think it was one continuous. I do think the district court got that right, especially under the language of the statute. We're looking at where the officer was reasonable. If there's any mistake at all, I think I'm hearing you say there were no mistakes in here. Um, we'll see if we go that far with you. But insofar as where the officer was reasonable, we do need to know why he was acting. And this is a continuation of what Judge Higginson started. Uh, Officer Barry Entel said that the traffic violation occurred when he changed lanes, meaning did not start the blinker within a hundred feet prior to turning into the next lane, shifting into the next lane. If that is what he is saying in the law is and created a violation, that's the fact that we have to rely on. I mean, that fact is not contested. He did change lane regardless of the distance. So then that interpretation of the law would need to be reasonable under HINE, uh, from an ambiguous statute or something else. Would you agree? Uh, yes. Now, I, uh, it's also been asserted, uh, that he, did he not also say he thought it was necessary to turn the blinker on more than a hundred feet before changing lanes? Because he did turn the blinker on before shifting to the turn lane, did he not? The, the, all of the discussions regarding lane changes in this fact pattern, this case, were changing to a turn lane. Okay. So to the extent he said lane, yes, Your Honor, he did say changing lane, but he didn't. Does the video, doesn't the video show that the blinker column came on before he turned, moved into the turn lane? Yes, Your Honor. Okay. And so the violation, if it occurred there, must be because he did not turn it on within a hundred feet of shifting to the turn lane. Yes, Your Honor. So that is the mistake of law that we must find to be reasonable. We must first find this mistake, which I don't think you concede, and we must also find it to be reasonable. He wasn't even saying it was within, closer than a hundred feet of the turn. So he wasn't thinking in those terms. So aren't we limited in our decision of mistake to what he said he thought the violation was at the time? I, I think here on review, the court is, can look at the entire, the entire scenario and look at whether or not this seizure violated the Fourth Amendment and whether or not there was a violation of it. We are moving ahead from whether there was a proper reason to stop. So you're now moving into another issue? No, I'm just sort of backing up to the big picture of his Fourth Amendment rights. And, and I do believe that the district court got it correct when she said the order held that this was one continuous movement. This was getting into the turn lane to turn. And I did do a little research. It seemed like common sense, but it is true. In Texas, you cannot just park your car in a turn lane. Once you get in a turn lane, a roadway divided with two lanes going one way and one lane in the middle, it's very limited what you can do there. And certainly it is undisputed that he intended to turn. Under our assessment of reasonableness for an investigative stop, would you say that we could look at it all ourselves and say, well, it was a violation of reckless driving or it was an unsafe turn? Could we look to any moving violation that might fit and affirm on that basis? Or does it have to connect to what he said? My inclination is that the court has the ability to, to review the entire set of scenarios, but I can't think of a case off the top of my head where it would have been something, something so different than what an officer cited. But I, I do think in the instant case, the district court got it correct when the court said that he got into the turn lane to turn, he was intending to turn. It was one, one simple movement. And the fact of the matter is that Mahaffey addressed a completely different situation and a Texas court hasn't looked at 104.B, 104B in context of a turn lane. Although there was cases where they looked at a right turn lane at an intersection, but that's a completely different scenario than what we have here. Nothing with a left-hand turn lane in a, in a three-lane highway with the turn lane dividing the two. I'm not sure there's much more that can be said about that. My colleagues may think otherwise. What about even if the, if the, if the, there was no violation, if we find the mistake was, it was a mistake, it was not reasonable, where are we on suppression if the stop itself was not proper? Your Honor, I, I think that this traffic stop happened pretty quickly. This was not, um, the consent was given two minutes after. I think it's going to be, it would be very difficult for the, the United States to argue that we developed new suspicion outside of the original stop. That's why you, in footnotes 9 and 10, you say we are not arguing attenuation. I think if the Constitution was violated with this stop, then the United States believes that the stop was unconstitutional and, and it's pretty much done. What about the, what about the voluntary statements after the, finding the first cocaine? You know, that's interesting. I hadn't thought of it that way. I was focused more on the consent, which happened so immediately. Um, if, if the court felt that, that, that those voluntary statements, uh, were attenuated enough, uh, certainly the United States would agree, but I, I sort of as any of the, came from the position that, you know, um, if that seizure violated his Fourth Amendment rights, then, then, um, we might not necessarily need to go any further than that. But again, I, I don't think we need to go there. I do believe that this was. All right. All right. So are you representing the government? Are you telling us that if the stop was not proper, that we must reverse the denial of the motion to suppress? That's the position in our brief, Your Honor. I surely didn't read your brief that way, but, because you went into every bit of this, but so you're, again, Yes, Your Honor. If the stop is not proper, you concede that the seizure was illegal. I do. And, you know, it was a lot of cocaine, 16 kilograms of cocaine headed to our communities, but I, I do believe that, um, the precedent is clear that, that, you know, in the Fourth Amendment has been violated, there is the fruit of the poisonous tree. And I hadn't looked at the fact that those spontaneous statements, um, being attenuated, uh, but certainly the consent was so immediate, it would be very difficult to say otherwise. The registration decal, that's gone from the case. What, what, what, what, what was the officer saying? If you're a Mexican, if you have a Mexican license plate? It was a, it's a, it's kind of an interesting little fact, uh, that I never knew before, but yes, uh, you know, we have our, I'm not sure about Mississippi, but, um, or Louisiana, but I think in Louisiana, you do have that sticker on your front of your car. Well, Mexico has a similar, uh, rule that you have to have a sticker on your windshield, and he didn't have that sticker. There's no offense, can it, you've looked into that? We wouldn't have had jurisdiction. Uh, and, um, I thought that was, that was, it did lead to, um, ultimately I, you know, we got consent, but had we, had the officer not gotten consent, I think it could have led to reasonable suspicion to search the car because something was fishy. He wasn't following the rules. He was very nervous, all of these things. Uh, I did want to just touch briefly, and we've talked a lot about the mistake of law, the mistake of fact. I do not think this rises to clear error. We do have finding by the district court. We do have the credibility determination of Alvarado-Zars' witness, and reading over that testimony, I, I understand why the court found that. I found the testimony to be confusing. I do think in the society, I think the question about speed, Judge Higginson, that you were asking was very relevant. It goes to the reasonableness, and the, the witness for Alvarado-Zars was unable to answer that question. I simply don't think if the court gets beyond the legal issues that this does not rise to clear error. And finally, with regard to the remaining issues, I do think the language of the plea agreement was clear. It limited review to the district court's determination as to the sufficiency of the basis for the Texas Department of Public Safety patrol stops. So we're limited to the sufficiency of the basis. And, uh, if the traffic stop was not done in violation of the Fourth Amendment, then, then, the, that's all that needs to be decided. Even though, I'm sorry, I, I, I'm just sort of stunned by this concession. I appreciate it. But let me read you one paragraph. The totality of the circumstances show that defendant voluntarily gave consent to search. That's page 21. Defendant argues the district court erred when it held he voluntarily gave consent. As explained by the plaintiff, the district court erred when it held he voluntarily gave consent. Defendant supra. Defendant failed to preserve this issue and, as a result, waived it. If the court were to reach this issue, defendant has failed to show that his consent was involuntary. I, I, you know, maybe it was the way I put the different sections together. But, um, the, the, certainly the, the, um, the plea agreement prevents consideration of those issues. No, ma'am. The plea agreement, the plea agreement says the stop was improper. And then in the next paragraph it says, as to all issues other than those related to the ruling on the motion to suppress, we waive the right to appeal. So it appears that it, that it was preserved to raise every one of these issues. Interesting. Uh, I, I, I thought I heard, uh, counsel concede that the, uh, plea agreement did limit it to the basis. Limited time. But, but obviously none of you had Hine when this was occurring. Correct. And Hine, if I'm not mistaken, reversed our law. Uh, I was, I've debated with a colleague on that. It's hard to tell a public court when they've been reversed, but, uh, it certainly does fall into question. Would there be any case law suggesting in light of that we should remand this for assessment of, of application of the facts to a Hine since it changed Fifth Circuit law and the district court, to the extent it was thinking about this, was thinking about the Miller analysis, which isn't good anymore. I don't think, uh, if, if a remand was necessary, I almost, I almost think it would be more to sort of clarify some of the factual issues. Uh, certainly the United States wouldn't be opposed to, to a remand, but I do think the court has what's necessary under Hine. And again, my, my argument being that there was, there was not a mistake. Thank you. Judge, I respectfully ask you not to do that because it took 18 months for her to rule in the motions of the press. And if it is remanded, um, was any reason given for that? I was struck out as well. Judge, I don't know. I, I filed a motion to try to get my client released on, uh, uh, conditions of release because it was taken so long. But nonetheless, if I may, uh, read from the, uh, concurrent opinion of Judge Kagan real quick. Um, and she put it very simply and as females often do in deciding if an officer's mistake of law can support a seizure faces a straightforward question of statutory construction. If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake. But if not, not. The statute must pose a really difficult or very hard question of statutory interpretation. And she said those cases would be very rare. And I think Mahaffey that I gave the court is very similar to this case because the officer made a mistake. He thought you had to have the turn signal on when the lanes merged into a single. This is very analogous. We're changing over to a turn lane. And in Mahaffey, it said the step 104 is clear, it's unambiguous, and that a turn means a change of a direction from the path that you're going to into another area. So, the court has guidance as to what Texas has interpreter law. In Heim, the Supreme Court did not have case law from the state of North Carolina to help them define what that statute meant. And based upon that, they held that the statute was ambiguous. The Texas Driver's Handbook, when you look at lane change, it uses the term, it uses the word turn. It does. There's some built-in ambiguity right there. Well, it also, turn means a change of direction. And that was written by the Department of Public Safety. But so it means both. And when you look at 103, an unsafe turn, turn, that includes lane change. Well, no, I disagree. And let me just read to you what it says. It's unsafe to turn quote from a direct course. It doesn't say 60, 90 degrees. Direct course, one lane, not a turn. It would be unsafe. Well, Mahaffey defines for you, though, it means a movement. The Texas courts have given you guidance of what a... Dicta guidance, because it's talking about entering into a road, merging. So, the rest of it is dicta as to what a turn is vis-a-vis a lane change. It also gives you guidance, for example, turning into a driveway. But Mahaffey also says a change of lane only requires a signal, which we did. Real briefly, the 200 feet issue was, from my interpretation, was that what the expert said that we had our blinker on for 200 feet before we even got into the change lane. And how many feet before the turn? Pardon me? How many feet, therefore, before the turn? What do you say about that? Well, 200 feet before the lane and total how much? The trooper said the reason he stopped was that when we went into the lane... Change lane. Change lane. We didn't have... I'm sorry. When we did our turn into the lane change, we didn't have our blinker on for 100 feet, okay? That was what he stated. Our expert said he's wrong. I went and measured. He actually traveled 200 feet before he moved over to the change lane. And the 300 feet was when he actually went into the Pico. But then doesn't district court just say, well, he was driving. Speed's hard to estimate. As he said in his testimony, it's difficult to measure when we're driving. So, therefore, we conclude reasonable mistake of fact. Well, that was his statement. But if you apply Mahaffey's logic and reasoning of the Texas Court of Criminal Appeals, the statute is plain, it's unambiguous, and it would be unreasonable of him to reach that conclusion. That would be my position. Clear error of fact as to the reasonableness. Okay. So thank you all for letting me appear. Thank you both for your explanations of this case.